CASE No. 905.

## WILLINGHAM v. CHICK.

1. While the statement in the answer that defendant cannot "admit or deny," is not sufficient to put in issue the execution of the bond sued on, still, there being no evidence that the bond had not been executed, there was no material error in the charge to the jury, that "plaintiff has produced proof of the execution of the bond, which, in law, is ordinarily considered sufficient, but still the execution of the bond is a question of fact for the jury."

2. In an action brought by an unpaid creditor against his debtor's executors, who, after duly advertising for creditors, had fully distributed the estate, the burden of proof is upon the creditor to show that the executors had notice of his claim before they made the distribution.

3. Under the plea of *plene administravit* in behalf of executors, the returns of administrators and guardians of the estates of the legatees, charging themselves with amounts received from the executors, who at the time of trial are deceased, are admissible in evidence in support of the plea.

4. An unpaid creditor cannot charge executors with the possession of assets, because that the legatees accepted a depreciated currency in payment of their distributive shares.

5. Bond of a committee was given in 1843, the lunatic died in 1848, leaving as his distributees persons *sui juris*, and in 1849 the committee filed a statement of his indebtedness in the office of the commissioner in equity.

Charge of the Circuit Judge.

In 1876 plaintiff administered upon the estate of the lunatic, and in 1877 brought his action against the executors of a surety on the committee's bond, alleging the bond, and that "no part of said balance found to be due as aforesaid by said committee has been paid." The executors, by their answer, did not controvert this statement, nor did they plead payment, but set up the statute of limitations as a bar, and denied plaintiff's right of action, and did not deny the allegation that there had been no previous administration on the estate of the lunatic. *Held,* that under these facts the Circuit judge did not err in charging the jury that the liability on the bond, if it ever existed, would be presumed to be paid and discharged, and that for that purpose, if necessary, it would be presumed that letters of administration had been granted on the estate of the lunatic.

6. *Riddlehoover* v. *Kinard,* 1 *Hill's Ch.* 380, approved.

Before WALLACE, J., Newberry, February, 1880.

The nature of this action is sufficiently indicated in the opinion of the court. To these statement of facts as therein contained it will be proper to add a few other matters appearing in the brief.

The complaint alleged that no administration had ever been granted upon the estate of the said William F. Graham until that granted to this plaintiff; and this was neither admitted nor denied in the answer.

The receipts and testimony of legatees under the will of Thomas H. Henderson, showed that the executors, in settling with them in 1864, paid them in part with confederate money. To show payments to some of the legatees, the defendants were permitted to introduce, against the objection of plaintiff, the sworn returns of P. W. Chick, administrator of one of the legatees, of R. C. Chick, guardian of three of the legatees, and of Simeon Fair, guardian of three others of the legatees.

The Circuit judge charged the jury, *inter alia,* as follows:

The plaintiff has produced proof of the execution of the bond, which, in law, is ordinarily considered sufficient; but still the execution of the bond is a question of fact for the jury.

The defendant alleges that there is a presumption of fact that the bond has been paid. It is an ordinary rule of law that presumptions of payment will run against sealed instruments. In this case the commissioner in equity had the legal interest in said

bond. After a great lapse of time, a further presumption would arise that a prior administration had been granted upon the estate of a deceased person.

Notwithstanding the legal interest in the bond in suit was in the commissioner, twenty-eight years have elapsed since the death of Graham, and with a view to having the question finally determined, I charge you, under authority of the case of Witt *v.* Elmore, that a presumption does arise that payment has been made. Such a presumption does not arise against an infant, because of disability. It is in proof, in this case, however, that the parties in interest were *sui juris;* and you must take this fact into consideration, in connection with the presumption of a previous administration. After twenty years the presumption arises, and the burden is on the plaintiff to show that the bond is not paid, as much so as to prove the execution of his bond.

As to the plea of *plene administravit.* If a plaintiff comes into court and establishes his claim, and the executor pleads *plene administravit,* and that all funds have been paid out, and his accounts balanced, if he satisfies the jury that he has fully administered, unless notice of the claim be brought home to him, he is entitled to a verdict. If, however, such notice be brought home to him, the plea of *plene administravit* is no answer, but it is incumbent upon the plaintiff to show that he had such notice.

It is not necessary that I should charge you about the payments in confederate money and notes. The law holds that anything is payment which is accepted as such; and if the legatees accepted payment in confederate currency of their legacies, it is a good payment as against this plaintiff, and the receipts introduced are evidence of such fact.

Upon request, I will further charge that the presumption of payment could only arise upon the expiration of twenty years from the granting of letters of administration upon the estate of William F. Graham; but from the lapse of time a previous administration may be presumed.

I will likewise charge you that if the executor of Thomas H. Henderson had knowledge of his testator's liability on the bond

described in the complaint, the plea of *plene administravit* will not avail.

If you should find that the bond in suit has been paid from the presumptions, by lapse of time, of a previous administration and payment, your verdict should be for the defendant. If you should not find such payment, but should find that the executor has fully administered his testator's estate without notice of this claim, your verdict should be for the plaintiff, subject to the plea of *plene administravit.*.

If, however, you should find that there was no such payment, and shall likewise find that said executor has not fully administered the estate of Thomas H. Henderson, or that he had notice of this claim before the distribution amongst the legatees, your verdict should be for the plaintiff generally for the amount claimed in his complaint.

The plaintiff, in writing, requested his Honor to charge :

1. That payment is not pleaded, and the matter of presumption of payment cannot be considered by the jury.

2. That the non-payment of the money sued for being admitted by the answer is sufficient to rebut such presumption.

3. That any presumption of a previous grant of administration upon the estate of William F. Graham is rebutted by the admission in the answer of the defendant that no administration had in fact been granted on said estate previous to that granted to the plaintiff.

4. That presumption of payment arising from a lapse of twenty years is rebuttable.

5. That the defendant, in order to make out the plea of *plene administravit,* must show want of notice of the liability of the testator.

All of which requests were refused ; to which refusal the plaintiff excepted.

To the admission of the testimony objected to, and to these charges and refusals to charge, the plaintiff excepted ; and upon his exceptions appealed to this court.

*Messrs. W. H. Lyles* and *Geo. S. Mower,* for appellant.

*Messrs. Pope & Fair,* contra.

August 31st, 1880.   The opinion of the court was delivered by

McGowan, A. J.   This is an action on bond of committee of lunatic against the personal representative of one alleged to be a surety.   On March, 10th 1843, one Nathan Parrott gave bond to L. J. Jones, Esq., commissioner in equity for Newberry county, as committee of one William F. Graham, a lunatic.   It is alleged that Thomas H. Henderson, John H. Gilliam and J. D. Kenner were sureties on the bond.   May 15th, 1848, said lunatic, Graham, died intestate, leaving, as his distributees, brothers and sisters of full age.   A statement of the accounts of Parrott committee was found in the office of the commissioner in equity, of date February 1st, 1849, by which it appeared that there was in the hands of the said Parrott $2014.94.   At whose instance, whether that of the commissioner or of the distributees, or of an administrator, this statement was made, does not appear. It may have been *ex parte*.   There is no evidence that the sureties knew anything about it, or that there was any decree, by any authority, that the amount should be paid.   January 15th, 1860, Thomas H. Henderson, one of the alleged sureties, died, leaving a will, of which Reuben C. Chick and P. W. Chick were executors.   They qualified, gave notice for creditors to present their demands—the claim now sued was not presented— and on January 22d, 1864, finally settled and distributed the estate.   R. C. Chick afterwards died, leaving P. W. Chick the surviving executor, and, afterwards, he died, leaving a will, of which Sarah E. T. Chick is executrix, and that makes her, by law, also the executrix of the estate of Thomas H. Henderson. The plaintiff, William P. Willingham, took out letters of administration on the estate of Graham, the lunatic, September, 1876, and brought this action on the bond against Sarah E. T. Chick, executrix of Thomas H. Henderson, February 5th 1877, being *thirty-four* years after the bond bears date ; *twenty-nine* years after death of Graham ; *twenty-eight* years after the statement of the account, which was found in the commissioner's office ; *seventeen* years after the death of Henderson, the alleged surety and debtor, and *thirteen* years after a final settlement and distribution of his estate under his will.   Under the charge of the Circuit judge, the jury found for the defendant.   The plaintiff

G

excepted to the rulings, and the case comes to this court. The exceptions are numerous, and it may contribute to clearness to consider them under three general heads.

1. In regard to the proof of the execution of the bond by the testator and alleged surety, Thomas H. Henderson, deceased.

The fourth exception alleges error on the part of the judge in ruling " that the execution of the bond described in the complaint was still a question of fact for the jury, although it had been proved, and was not denied in the answer." The first and second paragraphs of the complaint charge the execution of the bond by Henderson. The first paragraph of the answer is in these words: " This defendant cannot admit or deny the allegation set forth in the first and second paragraphs of plaintiff's complaint, but demands that plaintiff be put to strict proof thereof," and the fourteenth and fifteenth paragraphs deny generally the plaintiff's right to recover " because she says no cause of action exists against the defendant." We do not think that the answer sufficiently put in issue the execution of the bond in suit. The defendant should either deny the facts alleged in the complaint from positive knowledge, or deny that he has any knowledge of such facts sufficient to form a belief of them. To say that he cannot admit or deny them is not equivalent to saying that he neither possesses positive knowledge to the contrary or that he is destitute of knowledge on the subject, but admits of the construction that his inability to admit or deny arises from matter not disclosed, and which, if disclosed, might not be sufficient in law to justify him for neither admitting or denying. But we do not think that any *material* error has been committed. The judge submitted the bond as proved, *prima facie* at least. Unless, then, there was some evidence tending to show that the execution of the bond had not taken place, there was nothing on which the jury could overcome the *prima facie* proof. No such evidence appears, and it cannot be assumed that the jury took advantage of the general proposition that the question was one of fact to override the *prima facie* proof without evidence for that purpose. It is presumable from the whole case that the verdict did not turn on any question of the sufficiency

of the proof of the bond, and, therefore, there is nothing to contradict a legal presumption arising, as before stated.

2. As to the defence of *plene administravit* made by the defendant executrix. The fourteenth exception alleges error in the charge: " That it was incumbent upon the plaintiff to show that the executors of Thomas H. Henderson, deceased, had notice of his testator's liability under the bond in order to make the plea of *plene administravit* no answer." This exception makes the point as to *the onus* of proof upon the question of notice of the claim by the executors of Henderson before they distributed the estate. The executors advertised for creditors. This creditor did not present the claim within the time prescribed by law. He was in default, and could make no progress until it appeared that the executors had notice of the claim ; upon that subject he held the affirmative, and it was incumbent on him to prove it. The executrix could not be required to prove a negative. The law requires estates to be settled promptly. Creditors are required to present their demands *within twelve months,* and there are no exceptions in terms on account of alleged disabilities. The law proceeds on the assumption that creditors will look after their interests, and provides that if the creditors do not present their claims in time the " executors shall not be responsible." Here the claim was not presented in time, and if the plaintiff wished to relieve himself from the consequences of the default, it was necessary for him to prove that the executors had notice.

The first, second and third exceptions make the point that it was error to admit in evidence *returns* of guardians and administrators of legatees, tending to show that they had received in full their shares. One of the issues in the case was that the estate of Thomas H. Henderson had been settled and paid out to the legatees. Any evidence tending to prove this issue was admissible. It is true the legatees are not parties, but the issue of distribution was made by the executrix. The executors who made the distribution were dead, and the best evidence to prove the fact alleged was the settlement itself, or the testimony of the legatees, or receipts and returns showing that their legacies had been paid to them. What weight the testimony might be en-

titled to was for the jury. We are only dealing with its admissibility.

The fifteenth exception alleges error in charging " that if the legatees of Thomas H. Henderson accepted payment of their legacies in confederate money it is a good payment as against this plaintiff, and that the receipts introduced are evidence of such fact." That is payment which is received as such. If the legatees chose to receive their legacies in part or in whole in confederate money, and receipt for the same, we do not see that the plaintiff has any right to complain of that, or how it bears upon the issues in this case.

3. All the other exceptions, in one form or another, allege error on the part of the judge in charging " that after a great lapse of time the liability on the bond, if it ever existed, would be presumed to be paid and discharged, and that for that purpose, if necessary, it would be presumed that letters of administration had been granted on the estate of William F. Graham, the intestate."

I. It may be doubtful whether the mere statement of account made by Parrott in the commissioner's office was in itself enough to fix the liability of a surety upon a bond for the performance of covenants without further account and making the representative of Parrott a party; but assuming that it was, the question arises whether that liability, thus fixed, is still a subsisting liability, thirty-four years after the bond was given, or is lost by lapse of time and the statute of limitations. The twenty-first statute, James I., made of force in this state, was our only statute of limitation until the adoption of the code in 1870. That statute had no limitation as to sealed instruments. The statutes now of force, both in England and South Carolina, include expressly bonds. Under the old law in force, up to 1870, which did not provide a limit to actions on bonds, it was soon seen that there was a necessity for a limit to actions in such cases. The courts at an early day applied to actions on bonds, the well-established doctrine of *presumption.* Twenty years possession would presume title to property, and upon the same principle they held that twenty years would presume payment and discharge of a bond. The doctrine is now perfectly familiar, and

is no where better stated than in Angell on Limitations, § 93 : " By analogy to the statute of limitations. an artificial presumption has long been established that when payment of a bond or other specialty was not demanded for twenty years, and there has been no circumstance to show that it was still acknowledged to be in existence, the jury are to presume payment at the end of twenty years. This doctrine has been so often recognized that it is not requisite to cite any of the countless authorities which sustain it."

II. Admitting the general principle, which cannot be denied, it is, however, insisted that it was error to apply it to this case on account of the state of the pleadings. Although the lapse of time here is more than sufficient, it is said that the defendant executrix answered in such a manner as to exclude the estate she represents from all benefit from the presumption ; that the presumption is one of fact, and cannot be raised unless payment as such is pleaded in form. The defendant did not plead payment in form, but she did plead the statute of limitation, and denied generally the plaintiff's right of action. This omission in the answer of the executrix is not necessarily fatal to the defence of lapse of time. The presumption of payment is one which the law raises whenever the facts appear which give rise to it. *Angell on Limitations*, § 78 ; *Jackson* v. *Sackett*, 7 *Wend.* 94 ; *Bass* v. *Bass*, 8 *Pick.* 187 ; *Starkie's Ev.* 823; *Best on Presump.* 188.

III. It is further insisted that the presumption of payment, being one of fact, may be overthrown by proof, and that the omission of the defendant in her answer to controvert specifically the negative statement of the complaint that " no part of said balance found to be due as aforesaid by said Nathan Parrott has been paid," makes that statement proof. The answer of the executrix does not, as a matter of fact, make any such acknowledgment, and the technical result, which the law declares for failing to controvert the statement, is not one of those acknowledgments in fact which affect the statute of limitation.

But if the executrix had herself made the statement in her answer, it would not have been sufficient to rebut the presumption. More than twenty years had expired *before* the action was

brought, and the perfected presumption had acquired an artificial force, and the cause of action did not exist. In analogy to the operation of the statute of limitation, after the law was complete, mere admissions by the executrix could not have the effect to make a new debt. To have that effect there must be a distinct admission of a subsisting legal obligation of the debt, unaccompanied by any conduct or expression indicative of an unwillingness to pay. As was said by Judge Wardlaw, in delivering the judgment of the court in the case of *Stover & Barnes* v. *Duren*, 3 *Strob.* 448 : " The presumption is no legal bar, but originally it was admitted in analogy to the then prevailing statute of limitation, and in considering admissions which rebut it, the same principles are applicable as in considering admissions to take a cause of action out of the statute of limitation. So long as the lapse of time is merely circumstantial evidence, which, by ordinary inference, creates belief, any admission which oppose the inference of payment drawn from it, go to the jury along with it, and all are weighed together according to their natural force. But when, by the expiration of *full twenty years*, the presumption of payment has acquired an artificial force, so that it stands in the place of belief, an admission that the payment has not in fact been made, cannot of itself destroy the effect which considerations of policy have given to a certain period of time, whether the payment has or has not been made."

IV. But it is insisted that the time which raises the presumption of payment does not begin to run until there is some one authorized to receive payment, and that the distributees of Graham could not legally receive their shares of this debt except through an administrator, and that none was appointed before the plaintiff in 1876.

The proposition is that this claim was in a state of suspended animation from 1843 until 1876, when administration upon the estate of Graham breathed into it the breath of life. It is true that the statute of limitation does not commence to run until there is some one who can sue; but it is not certain that the distributees of Graham could not have been paid by Parrott without administration. They were *sui juris*, and, by consent, might have received payment directly. The fact that Parrott volun-

tarily made a statement of the amount due in the commissioner's office would seem to favor the idea that the parties settled without administration. But, without affirming anything upon this point, both public policy and private rights require that there shall be an end of litigation. In all civilized countries some term of time has been observed, at the end of which a party is exonerated from all responsibility. There should have been an administration upon the estate of Graham soon after his death. The law requires that there should be administration upon the estate of every man who dies intestate owning property. It is the right of the next of kin and creditors to administer, and if they fail, certain officers are required to administer the estate as "derelict." If they, whose duty and interest it is to administer, can, without injury to their rights, neglect to do so for forty years, why may they not for fifty years or a century? It cannot be permitted that parties shall thus, to the injury of others, select their own time to administer and pursue their rights. It is all important that estates should be settled up promptly and finally. Those who neglect to look after their rights in a reasonable time must suffer the consequences. After thirty years the presumption arises that all parties did their duty, and that administration was granted upon the estate of the intestate Graham.

After a lapse of twenty-eight years, an executor's assent to a legacy of freedom to a slave may be presumed. *Bowers* v. *Newman*, 2 *McM.* 486.

Where a negro has been at large and acting as a freeman for more than twenty years, a deed of *manumission*, under the act of 1800, may be presumed. *Miller* v. *Reigne*, 2 *Hill* 592.

Thirty years' possession will raise the presumption of deed or other intermediate conveyance. *Gray* v. *Bates*, 3 *Strob.* 500.

After twenty years of separation between husband and wife a deed of separation will be presumed in order to confirm title in her alienees. *Jones* v. *Jones.* 3 *Strob.* 319. Upon this subject we adopt the ruling of Chancellor Harper in the case of *Riddlehoover* v. *Kinard*, 1 *Hill's Ch.* 380: "It is said we cannot presume either a general administration or a valid will. It is hardly necessary to say that legal presumptions are not founded on actual belief. As observed by Lord Erskine in *Hillary* v.

*Waller*, 12 *Ves.* 267 : " Mankind, from the infirmity and neces-sity of their situation, must, for the preservation of their prop-erty and rights, have recourse to some general principle to take the place of individual and specific belief.    *    *    *    Pre-sumption must be sometimes much against the well-known truth of the fact. If twenty years have elapsed without the payment of interest or any acknowledgment of a bond, we must presume it paid, notwithstanding the fullest conviction that it never has been paid. In Hutchinson *v.* Noland, it was proved by the ordinary that no administration had ever been taken out until granted to the plaintiff. As said in that case, we will presume whatever is necessary to give efficacy to long possession," &c.

The exceptions are overruled and the appeal dismissed.

Willard, C. J., and McIver, A. J., concurred.